# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| TRANSCARIBBEAN TRADE, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MISGUNST INVESTMENT CORP., ) | |
| ET AL., ) | |
| ) | |
| Defendants, ) | CIVIL NO. 1996-173 |
| ) | |
| vs. ) | |
| ) | |
| CLARK BROTHERS ENTERPRISES, ) | |
| ET AL., ) | |
| ) | |
| Third-Party Defendants. ) | |
| _____) | |

## REPORT AND RECOMMENDATION ON
## MOTIONS TO ENFORCE LIEN AND TO INTERVENE

The Law Offices of Karin A. Bentz, P.C. ("Bentz") moves to intervene in this action or, alternatively, to enforce an asserted charging lien on certain settlement proceeds due Transcaribbean Trade, Ltd. Bentz seeks to obtain payment of attorney's fees it claims are owed to it by Transcaribbean.

Bentz instituted this action on Transcaribbean's behalf on August 22, 1996. On January 22, 2002, Attorney Karin Bentz was disqualified from further representation of Transcaribbean. Over eight and one-half years later, after the matter was scheduled for a December 2010 trial by Order dated July 21, 2010, Bentz, on October 19, 2010, filed a Notice and Statement of Lien asserting a charging lien "against any property or money acquired by its services specifically including any settlement proceeds or judgment entered in favor of Plaintiff in this matter."

*Transcaribbean Trade, Ltd. v. Misgunst Investment Corp., et al.*
Civil No. 1996-173
Report and Recommendation
Page 2 of 8

Transcaribbean and the remaining defendants settled prior to the trial and on December 6, 2010, Transcaribbean filed the parties' Settlement Agreement. Bentz filed the current motions on December 22, 2010. Because Bentz has not established entitlement to any of the relief sought, it is recommended that the motions be denied.

**A. Motion to Enforce Lien**

Virgin Islands Code, title 5, § 541(b) provides that "the measure and mode of compensation of attorneys" is left to the agreement of the attorney and client.[1] Because Virgin Islands law does not specifically address an attorney's ability to maintain a charging lien against a client's property, the Court may look to the restatement of law for the rule of decision applicable to this issue.[2] The Restatement (Third) of The Law Governing Lawyers, §43(2) provides that "[u]nless otherwise provided by statute or rule, a client and lawyer may agree that the lawyer shall have a security interest in property of the client recovered for the client through the lawyer's efforts . . ."[3]

As noted, there is no governing Virgin Islands statute. ABA Model Rule of Professional Conduct 1.8(i)[4] addresses this issue, and in pertinent part provides that "[a] lawyer shall not acquire

---

[1] V.I. Code Ann. tit. 5, § 541.

[2] V.I. Code Ann. tit. 1, § 4.

[3] Restatement (Third) of The Law Governing Lawyers § 43(2) (2000).

[4] The ABA Model Rules have been adopted as the code of ethics for members of the Virgin Islands Bar. See V.I.S.CT. R. 205, Bylaws of the Virgin Islands Bar Association Integrated, X(D).

*Transcaribbean Trade, Ltd. v. Misgunst Investment Corp., et al.*
Civil No. 1996-173
Report and Recommendation
Page 3 of 8

a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may: (1) acquire a lien authorized by law to secure the lawyer's fee or expenses. . . ."[5]  Thus, we conclude that the determination of whether Bentz is entitled to a charging lien may be decided under the Restatement (Third) of The Law Governing Lawyers § 43.

Under Section 43(2), in order to maintain a charging lien, Bentz must first meet two requirements.  Initially, it must establish that the firm and Transcaribbean agreed that a lien would attach to the settlement proceeds at issue to secure payment for services.  Second, Bentz must demonstrate that such settlement proceeds were obtained through the firm's efforts.  We conclude that neither requirement is met here.

With respect to demonstrating the existence of an agreement to create a lien, Bentz presents only an unsigned retainer letter that contains some lien language.  Beyond this, there is no evidence offered to establish that Transcaribbean ever agreed to give counsel a security interest in any of its property.  An unexecuted retainer agreement does not by itself constitute sufficient evidence of the existence of an agreement between Transcaribbean and Bentz to create the right to a lien.  Accordingly, the Court concludes that Bentz has not established that the firm and Transcaribbean agreed that Bentz may have a charging lien to secure payment for services.

Even if Bentz had met the first requirement under Section 43(2), it must also establish that the settlement proceeds it seeks to encumber were obtained through the firm's efforts.  A review of

---

[5] ABA Model Rules of Professional Conduct 1.8(i) (2010).

*Transcaribbean Trade, Ltd. v. Misgunst Investment Corp., et al.*
Civil No. 1996-173
Report and Recommendation
Page 4 of 8

the history of this case indicates to the contrary. Although in November 1997 and July 1999, Transcaribbean obtained several judgments against various defendants, by opinion dated September 17, 2001, the Court of Appeals for the Third Circuit vacated Transcaribbean's 1999 judgment against Clark Brothers Enterprises. At the time of Attorney Bentz's disqualification in January 2002, it appears that all of Transcaribbean's claims remained pending, except as to Misgunst and to some extent, Peter Clark. It further appears that no significant action had been undertaken up to that time to resolve the remaining issues. Because Attorney Bentz's disqualification occurred before any substantial work had been undertaken with regard to the remaining defendants and remaining issues, the Court cannot find that the 2010 settlement was obtained through Bentz's efforts. Because the requirements of Section 43(2) have not been met, Bentz cannot claim a charging lien on Transcaribbean's settlement proceeds under that Section.

Next, Restatement Section 43(4) provides that a lawyer may obtain a security interest in a client's property when it is not in the lawyer's possession or recovered through the lawyer's efforts "only as provided by other law and consistent with §§ 18 and 126."[6] The Court is not aware of any authority under Virgin Islands law providing for a security interest on a client's property under these circumstances, and Bentz has provided none. The Court therefore need not go any further to conclude that no lien is available under Section 43(4) of the Restatement.

---

[6] See Restatement (Third) of The Law Governing Lawyers § 43(4). Restatement (Third) of The Law Governing Lawyers § 18 discusses the enforcement of contracts between clients and lawyers. Restatement (Third) of The Law Governing Lawyers § 126 addresses the circumstances under which a lawyer may participate in a business or financial transaction with a client.

*Transcaribbean Trade, Ltd. v. Misgunst Investment Corp., et al.*
Civil No. 1996-173
Report and Recommendation
Page 5 of 8

Finally, Section 43(3) provides that "[a] tribunal where an action is pending may in its discretion adjudicate . . . [a] dispute concerning a lien asserted by a lawyer on property of a party to the action."[7] Bentz has not provided sufficient information to establish that there is a true "dispute" with Transcaribbean regarding its fees. Bentz filed only an unexecuted retainer agreement, unsupported by evidence of the existence of unpaid fees, or of how such fees were generated in the first instance. Further, the retainer agreement, to the extent it applies here, and the September 2010 letter from Delphine Farr Janey to Franklin Martinez attached at docket entry 437-1, provide that the parties would first mediate any fee dispute and, if the dispute was not resolved, the parties would next participate in arbitration. There is no evidence that either of these events occurred, and these methods of dispute resolution, as well as litigation, are certainly still available to the parties.

Finally, this motion was filed over eight years after Attorney Bentz was disqualified, and it has the potential to unravel a settlement that took many years to attain. The Court finds no compelling reason to risk that possibility on a motion that could have been filed long ago, and that is not central to the issues in the present case. For these reasons, the Court will not exercise its discretion to adjudicate this fee dispute.

---

[7] Restatement (Third) of The Law Governing Lawyers § 43(3).

*Transcaribbean Trade, Ltd. v. Misgunst Investment Corp., et al.*
Civil No. 1996-173
Report and Recommendation
Page 6 of 8

### B. Motion to Intervene under F.R.C.P. 24(a)

To intervene in an action as a matter of right under Federal Rule of Civil Procedure 24(a), a litigant must file a timely motion seeking to intervene.[8] In deciding timeliness, the following factors should be considered: (1) the stage of the case when the movant seeks intervention; (2) the prejudice caused by additional delay, if any, to the parties; and (3) the reason for the delay in filing.[9] Although a motion to intervene is not made untimely by the mere lapse of time, the Court may take into consideration when the party knew or should have known of the risk to its right.[10] Bentz should have known of a right to assert a claim for fees from January 2002 at the latest. Further, this case has been pending for 15 years, eight of which occurred after Bentz ceased its involvement by virtue of the disqualification, and during which a great deal of discovery and other proceedings took place. To allow Bentz to intervene after this case has been settled could possibly undo the settlement and unnecessarily prolong the resolution of this action, to the great and undue prejudice of the parties to the action. Finally, Bentz has not articulated any reason whatsoever for the eight-year delay in filing this motion. Under these circumstance, the Court finds that the motion to intervene was not timely, and it should be denied on that basis.

---

[8] Fed. R. Civ. P. 24(a). See, e.g., Government of the Virgin Islands v. Lansdale, 2010 U.S. Dist. LEXIS 75804, *7 (D.V.I. July 26, 2010).

[9] *Choike v. Slippery Rock University*, 297 Fed. Appx. 138, 140 (3d Cir. 2008) (citing *In re fine Paper Antitrust Litigation*, 695 F. 2d 494, 500 (3d Cir. 1982)).

[10] *General Star Indemnity Company, v. Virgin Islands Port Authority*, 224 F.R.D. 372, 375 (D.V.I. 2005).

*Transcaribbean Trade, Ltd. v. Misgunst Investment Corp., et al.*
Civil No. 1996-173
Report and Recommendation
Page 7 of 8

Moreover, even if Bentz could get past the timeliness hurdle, one seeking intervention under Rule 24(a) must show, among other things, that the movant has "an interest relating to the property or transaction that is the subject of the action" that might be impaired in its absence.[11] The Third Circuit described this interest in the following manner:

> An intervenor's interest must be one that is significantly protectable. [This means that] the interest must be a legal interest as distinguished from interests of a general or indefinite character. The applicant must demonstrate a tangible threat to a legally cognizable interest to have the right to intervene. This interest is recognized as one belonging to or one being owned by the proposed intervenor. . . . In general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene.[12]

In *Butler, Fitzgerald & Potter v. Sequa Corporation*,[13] in considering whether a discharged attorney's motion to intervene to assert a claim for attorney's fees is an interest contemplated under Rule 24(a), the court noted that "[t]he interest of discharged counsel seemingly is not in the subject of the underlying litigation, *i.e.*, the contract dispute that precipitated the litigation, but is rather an interest in recovering delinquent attorney's fees following an award in favor of its former client."[14] This Court, like the court in *Butler*, concludes that Bentz's claim for attorney's fees against

---

[11] Fed..R.Civ.P. 24(a)(2); *Liberty Mutual Insurance Company v. Treesdale,* 419 F.3d 216, 220 (3d Cir. 2005) (citation omitted).

[12] *Treesdale,* 419 F.3d at 220-21; see also *General Star Indemnity Company*, 224 F.R.D. at 375-76 ("intervention as of a right may be granted only upon a showing of a significant, legally protectable, and direct interest in the litigation," *citing Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir.1987)).

[13] 250 F. 3d 171 (2d Cir. 2001).

[14] *Id.* at 177; see also *The Government of the Virgin Islands v. Landsdale*, 2010 U.S. Dist. LEXIS 75804 (D.V.I. July 26, 2010).

*Transcaribbean Trade, Ltd. v. Misgunst Investment Corp., et al.*
Civil No. 1996-173
Report and Recommendation
Page 8 of 8

Transcaribbean is not an interest in the subject of the underlying action. As such, it not the type of legally protectable interest that would support intervention here. Bentz's interest here is but a mere economic interest in Transcaribbean's settlement proceeds. Because Bentz does not have a legally-protected interest in this underlying action, and because the Court considers the motion to be untimely, the Court need not address the remaining requirements under Rule 24(a). Bentz may not intervene under Rule 24(a).[15]

### C. Conclusion

For the foregoing reasons, it is recommended that Bentz's motions to enforce a lien and to intervene be DENIED.

Any objections to this report and recommendation must be filed in writing within 14 days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. Section 636(b)(1)(B); LRCi 72.3.

S/
**RUTH MILLER**
**United States Magistrate Judge**

---

[15] Additionally, Bentz has not complied with the procedural requirement in Rule 24(c) in that its motion was not "accompanied by a pleading that sets out the claim . . . for which intervention is sought."