IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| TRANSCARIBBEAN TRADE, LTD. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 96-173 |
| | : | |
| MISGUNST INVESTMENT CORP., et al. | : | |
| | : | |
| v. | : | |
| | : | |
| CLARK BROTHERS ENTERPRISES, | : | |
| INC., et al. | : | |

## MEMORANDUM

**Sánchez, J.**                                                    **May 18, 2011**

On December 6, 2010, after nearly 15 years of litigation regarding a property dispute, the parties in this action notified this Court they had reached a settlement in which Plaintiff Transcaribbean Trade, LTD. (Transcaribbean) would receive payment from Defendants. Sixteen days later, The Law Offices of Karin A. Bentz, P.C. (Bentz) filed a motion to intervene in this action and a motion to enforce a purported charging lien on any settlement funds obtained by Transcaribbean. For the following reasons, Bentz's motions are denied.

**FACTS**[1]

Bentz's attempt to intervene in this matter relates to her representation of Transcaribbean from August 22, 1996, until her disqualification on January 22, 2002.[2] Before her disqualification,

---

[1] Because the underlying facts of this case are not relevant to the instant motions, they need not be discussed herein.

[2] Bentz was disqualified because, before this litigation began, she performed legal work for Transcaribbean in which she learned facts pertinent to this case, thereby making her a likely witness at trial.

Bentz alleges she represented Transcaribbean pursuant to a retainer agreement which set forth, *inter alia*, Transcaribbean's responsibility to pay various costs and hourly fees for Bentz's services. Mot. to Enforce Lien, Ex. B. On October 19, 2010, more than eight years after her involvement in this matter ended and upon learning that this case was listed for trial, Bentz filed a Notice and Statement of Lien in which she asserted a charging lien claiming entitlement to funds acquired by Transcaribbean in this matter, "including any settlement proceeds."

On December 6, 2010, immediately before trial was scheduled to begin, the parties notified this Court that they had settled. The same day, Transcaribbean filed a signed Settlement Agreement. On December 22, 2010, Bentz filed a motion to intervene and a motion to enforce her asserted charging lien against Transcaribbean's settlement proceeds.[3]

**DISCUSSION**

In her one-page motion to intervene, Bentz asserts she is entitled to intervention as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) because she "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [her] ability to protect [her] interest."

When a party seeks to intervene as of right under Rule 24(a)(2), the party must show he or she (1) filed a timely application for leave to intervene, (2) possesses a "sufficient interest in the underlying litigation," (3) will have its interest impaired or affected by the disposition of the

---

[3] On January 28, 2011, at the request of this Court, Magistrate Judge Ruth Miller filed a Report and Recommendation (Report) advising this Court to deny Bentz's motions. On February 11, 2011, Bentz filed an objection to this Report, asserting the Magistrate Judge's recusal was warranted due to her prior dealings with Bentz. Although a review of her records revealed no such conflict, out of an abundance of caution the Magistrate Judge elected to recuse herself. Therefore, this Court has conducted an independent analysis of the instant matter rather than adopting the Report.

underlying action, and (4) the other parties to the action cannot adequately represent the intervening party's interests. *Liberty Mut. Ins. Co. v. Treesdale*, 419 F.3d 216, 220 (3d Cir. 2005). Whether an application is "timely" within the meaning of Rule 24(a) depends not only on the length of time that has passed since the litigation began, but is also judged based on when the party knew, or should have known, that the disposition of the case could create a risk of harm to the party's rights. *Gen. Star Indem. Co. v. V.I. Port Auth.*, 224 F.R.D. 372, 375 (D.V.I. 2005). In addition, to determine whether a motion to intervene was timely filed, a court must consider the totality of the circumstances, including "(1) [h]ow far the proceedings have gone when the movant seeks to intervene, (2) the prejudice which resultant delay might cause to other parties, and (3) the reason for the delay." *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982).

Bentz's motion to intervene–filed more than eight years after her disqualification from this case and sixteen days after the parties settled their claims amicably–is untimely. Between 2002 and October 2010, Bentz apparently did nothing to protect any rights related to this action, even though she should have know that without any intervention, her ability to collect attorneys' fees was at risk. Her eight-year period of inactivity is inexplicable, and Bentz has provided no reason for her neglect. Instead, she apparently believes a seven-sentence motion is sufficient to persuade this Court to permit her to intervene in a case which has finally settled after 15 years of litigation. Allowing intervention at this late date would prejudice all parties by unnecessarily prolonging the resolution of a case which is, by far, the oldest on this Court's docket. On this ground alone, Bentz's motion to intervene fails.[4]

---

[4] The filing of this motion after Bentz's long absence from this case is so egregious that this Court is willing to entertain a motion for sanctions pursuant to Federal Rule of Civil Procedure 11, should either party wish to file such a motion.

Moreover, Bentz does not have a sufficiently protectable interest in the outcome of this litigation. To be "sufficient," this interest must be "a tangible threat to a legally cognizable interest." *Id.* (citing *Mountain Top Condo. Ass'n v. Dave Stabber Master Builders, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)). "In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene." *Id.* While some courts have allowed intervention for the purpose of collecting attorneys' contingency fees, *see Gaines v. Dixie Carriers*, 434 F.2d 52, 54 (5th Cir. 1970), the existence of unpaid hourly attorneys' fees does not provide a sufficient basis for intervention. *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 177 (2d Cir. 2001) (upholding a district court's refusal to allow intervention based on an attorney's charging lien for unpaid fees); *Premier, Inc. v. Commercial Underwriters Ins. Co.*, No. 02-3199, 2004 WL 32918, at *3 (E.D. La. Jan. 5, 2004) (denying intervention to an attorney because the unpaid hourly attorneys' fees did not constitute "a direct, substantial, and legally protectable interest in the property or transaction that forms the basis of the controversy"); *cf. Kant v. Seton Hall University*, 10-2258, 2011 WL 1335821 (3d Cir. Apr. 8, 2011) (affirming a district court's award of attorneys' fees based on a separate fee petition filed after the attorney's motion to intervene to collect fees was denied). Bentz's interest here is economic and relates only to her attempt to secure payment from Transcaribbean for unpaid hourly fees. Her interest is irrelevant to the resolution of the underlying dispute, and Bentz may seek to collect any fees she is owed in other ways which will not interrupt the orderly conclusion of this case. Thus, Bentz's motion to intervene is denied.

Bentz also seeks to assert a charging lien against Transcaribbean's settlement proceeds. Attorney charging liens are allowed in the Virgin Islands under limited circumstances. *See* Restatement (Third) of The Law Governing Lawyers § 43(2) ("Unless otherwise provided by statute

4

or rule, a client and lawyer may agree that the lawyer shall have a security interest in property of the client recovered for the client through the lawyer's efforts . . . .").[5]  To establish entitlement to a charging lien, an attorney must show (1) an agreement to create a lien existed between the lawyer and client, and (2) the proceeds which would be subject to the lien were procured through the attorney's reasonable efforts.  *Id.*  "The fee claim with respect to which a lien is asserted must be advanced in good faith and with a reasonable basis in law and fact."  *Id.* cmt. h.

The only evidence Bentz offers in support of her claim that Transcaribbean agreed to create a lien is an unsigned retainer letter which states, "[Bentz] may enforce an attorney's lien against documents, property or money of Client in its possession or against property or money acquired by its services, in accordance with Virgin Islands law." Mot. to Enforce Lien, Ex. B 3.  This unexecuted agreement is insufficient to show that Transcaribbean agreed to the creation of a security interest for Bentz's benefit because, in the absence of a signature or other evidence, there is nothing to show Transcaribbean representatives agreed to the terms of this retainer.  Moreover, Bentz has not shown the settlement proceeds, obtained eight years after her disqualification, were procured through her efforts.  At the time Bentz was disqualified, no substantial work had been done with regard to the majority of the claims and defendants.  The primary discovery period began after Bentz's 2002 removal and continued through 2005.  Dispositive motions were filed during 2004 and 2005, and the Court ruled on such motions in 2006.  In 2006 and 2007, settlement negotiations were undertaken which helped move this case to its conclusion.  Negotiations began again in earnest in 2010 and, in December of that year, were ultimately successful.  Bentz did  not participate in the discovery

---

[5] When, as here, there is no Virgin Islands law directly addressing a legal issue, a court may look to the applicable restatement of law.  1 V.I.C. § 4.

process, the drafting of dispositive motions, or the settlement negotiations which led to Transcaribbean's recovery.  As such, she is not entitled to a charging lien under § 43(2).[6]

Finally, Bentz argues the foregoing discussion is merely "academic" because this Court possesses the power to adjudicate a lawyer-client fee dispute in the underlying action even in the absence of intervention.  Reply in Supp. of Mot. to Enforce Lien 2.  While a court may hear this type of fee dispute, however, whether to exercise such authority is left to the court's discretion.  *See* Restatement (Third) of The Law Governing Lawyers § 43(3) ("A tribunal where an action is pending may in its discretion adjudicate any fee or other dispute concerning a lien asserted by a lawyer on property of a party to the action.").  This Court declines to exercise its discretion to hear Bentz's fee dispute here because this case has already reached its conclusion and there is no reason to further prolong the litigation.  Indeed, granting Bentz's motion would require a great deal of additional time and effort, including an evidentiary hearing and the submission of additional evidence to prove a true dispute exists.  Such additional effort would delay this case's resolution without benefitting the interests of judicial economy.[7]  Furthermore, Bentz's own submissions suggest a mediation should be the first step in any dispute regarding her attorneys' fees.  *See* Mot. to Enforce Lien, Ex. B 3 (stating that, if the parties cannot reach an agreement regarding a fee dispute, the parties shall first seek mediation); Reply in Supp. of Mot. to Enforce Lien, Ex. A (containing a letter in which Bentz

---

[6] Bentz is also not entitled to a charging lien under § 43(4), which allows for a security interest in client's property which has not been obtained by the attorney's efforts, because Bentz has not demonstrated that a valid contract exists or the standard set forth in § 126 was satisfied, as required by that section.

[7] This is particularly true here, because over the years this matter has been handled by several different district and magistrate judges.  This Court had no involvement in the proceedings which occurred before its assignment in July 2010, and thus does not have any knowledge regarding Bentz's claim other than what is reflected in the record.

proposes mediation of the fee dispute).  This Court therefore will not exercise its discretion to adjudicate this fee dispute.

An appropriate order follows.

BY THE COURT:


 \s\ Juan R. Sánchez
Juan R. Sánchez, J.